# Mizell, *et al. v.* State *ex rel.* Gresham.

## *Quo Warranto.*

(Decided May 16, 1911.   Rehearing denied June 27, 1911.
55 South. 884.)

1. *Quo Warranto.*—The validity of a municipal election authorized by section 1068 and 1164, and ordered by those in authority, cannot be determined on quo warranto, but the election may be contested under the provisions of section 1168, Code 1907, although the court may determine on quo warranto the validity of an election not authorized by a valid law, or an election in territory not included in the law, or an election ordered by those having no color of authority. (Section 5464, Code 1907.)

2. *Elections; Polling Places; Validity.*—The action of the council of a town in selecting a polling place after the mayor had given notice of the holding of the election at another place did not invalidate the election held at the place fixed by the council.

3. *Same; Selection; Contest.*—Where the qualified electors of a town had an opportunity to vote at an election, and a majority voted at the polling place fixed by the council of the town, and the minority cast their ballots at an unauthorized place, and the inspectors of the election were eligible to hold that office, the election was not void, but was subject to contest within section 1168, Code 1907.

4. *Same; Election Officers; Selection.*—While the law contemplates that inspectors of an election of a town shall be selected at the time the election was ordered, yet, the changing them at a subsequent date does not invalidate the election, and upon discovering that the inspectors appointed are unfit, the council of the town may appoint others, notwithstanding the provision of section 1164, Code 1907.

[Mizell, et al. v. State ex rel. Gresham.]

APPEAL from Geneva Circuit Court.

Heard before Hon H. A. PEARCE.

Quo Warranto by the state on the relation of W. J. Gresham, against Frank J. Mizell and others, seeking to oust them as mayor and council of the town of Samson. From a judgment for relator respondent appeals. Reversed and remanded.

W. O. MULKEY, and J. M. CHILTON, for appellant. Quo Warranto is not the proper remedy.—Sec. 5464, Code 1907; *Patton v. Watkins,* 131 Ala. 387. The election should have been contested under the provisions of section 1168, Code 1907.—*Parks v. State,* 100 Ala., 634; *Hilliard v. Brown,* 97 Ala. 92. There was a misjoinder of parties respondent.—32 Cyc. 1447; 17 Enc. P. & P. 440; *People v. DeMille,* 93 Am. Dec. 179. If quo warranto would lie, the question after all would be who received the greatest number of votes. *Echols v. The State,* 56 Ala. 137. The burden is on the challenger to show that the vote was not a qualified vote.—*Black v. Pate,* 136 Ala. 608. It appears that Mizell received the largest number of votes, and even if there was irregularity, and the council acted fraudulently and corruptly, then the election would not be set aside, unless the person declared elected was not elected in fact.—*Lee v. The State,* 49 Ala. 43. The resignation of Pinkard was complete when made, and he ceased to be a member of the council from the date of his resignation.—*William v. Fitts,* 49 Ala. 402; *Almon v. Fowler,* 160 Ala. 187. Hence, any acts in which he participated when his presence was required to make a quorum were irregular at least, and the subsequent appointment of inspectors made at a meeting of the council when an actual majority was present must be deemed the valid appointment. The failure to give the notice does not affect the

[Mizell, et al. v. State ex rel. Gresham.]

validity of the election.—*Wilson v. Pike County,* 144 Ala. 397; *Comm. Ct. v. Thurman,* 116 Ala. 209.

ESPY & FARMER, and C. D. CARMICHAEL, for appellee. Having answered that they held the office and exercised the powers thereof, the burden was on the respondents to show their authority and right.—*Montgomery's Case,* 107 Ala. 372. The inspectors were not properly appointed.—Secs. 1063 and 1164, Code 1907; 15 Cyc. 411; 29 Cyc. 1371. Quo warranto is the proper remedy.—*Johnson v. Com. Ct.* 145 Ala. 557. The ballost were not provided as prescribed by law.—Secs. 372 and 389, Code 1907. The storehouse election was nothing, and the election held in the council chamber was the only election with any validity, as it was the only one held according to law.

ANDERSON, J.—This is a proceeding by the statutory quo warranto to oust the respondents, as mayor and council of the town of Samson. The respondents set up a certificate of a majority of the then existing town council, of September 20, 1910, certifying that they were, on the 19th of said month and year, duly and legally elected to the offices held by them respectively.

Section 1167 of the Code of 1907 provides that a certificate of election shall be given by the council, or a majority of them, which shall entitle the persons so certified to the possession of their respective offices immediately upon the expiration of the term of their predecessors, as provided by law. Section 1068 of the Code of 1907 fixed September 19 as the time for said election, and section 1164 gave the town council authority to provide for the holding of the same, by appointing the managers and clerks, and to designate the polling place or places. The election was therefore authorized

by law and was ordered by those clothed with legal authority to do so. If it was not held or ordered in all respects according to law, those would be considerations going to the validity of same, and not the jurisdiction or authority for same, and when the certificate of election was shown by the respondents, from those having authority to issue same, of an election held at a time and for a purpose authorized by law, and ordered by those having the authority to do so, the regularity or validity of said certificate cannot be determined or adjudicated, without passing upon the validity of the election. Section 5464 of the Code says: "The validity of no election, which may be contested under this Code, can be tried under the provisions of this chapter." It should be observed that the word "validity," and not "regularity," is used in the statute, and that it is intended to prohibit inquiry, in quo warranto, into things connected with an election, beyond mere irregularities.

The word "validity" has a well-understood technical, as well as popular, acceptation, and must receive such meaning in the courts, if its use in the statute does not suggest a different one.—29 Am. & Eng. Ency. of Law, 573; *Sharpleigh v. Surdam,* 1 Flip. 489, Fed. Cas. No. 12,711. We think, however, the word "validity," as used in the present statute, does not mean that the court would not have the authority to determine that what purported to be an election was not sanctioned or authorized by law—that is, that the statute authorizing same was void, or that the law did not authorize an election for the office in question, or that it related to territory not included in the law, or that the election was called or ordered by those with no color of authority; but when the election is authorized by a valid law, and is ordered by the direction of those with authority to order same, the manner of conducting or ordering same,

or of canvassing the returns, are questions that cannot be gone into in quo warranto, if the statute authorizes a contest of the election.

The election in question was authorized by law, was ordered by those in authority, and the manner of ordering same, the preparation of the ballot, the designation of the particular polling place, or places, relate to the validity or regularity of the election, and do not refer to jurisdiction or legal authority for the said election, and are questions which cannot be passed upon in quo warranto, if said election can be contested under the Code of 1907. Section 1168 of the Code of 1907 expressly authorizes a contest of the election in question. Nor does section 5464 prohibit inquiry only as to grounds for which a contest is provided, and authorize the consideration of grounds not covered by the statutory grounds for the contest of the election; but it excludes inquiry into the election, if the Code authorizes a contest, whether the grounds for contest include the things complained of or not. This was the construction given section 5464 in the case of *Park v. State*, 100 Ala. 634, 13 South. 756. This case was approved in the case of *State ex rel. v. Elliott*, 117 Ala. 150, 23 South. 1244, which held, however, that quo warranto was the remedy there, because the right to contest, in that instance, was given by the municipal act, and not the Code, and that section 3177 (5464 of the Code of 1907) did not apply. The present Code, however (section 1168), does give the right to contest the election in question, and section 5464 applies and cuts off the right to do so under quo warranto proceedings.

The case of *Blount Co. v. Johnson*, 145 Ala. 553, 39 South. 910, was not a quo warranto proceeding, and section 5464 had no application to same. Moreover the election there considered was not authorized by law,

[Mizell, et al. v. State ex rel. Gresham.]

and there was nothing to contest. Here we have an election authorized by law, held at a time fixed by law, and ordered by those with the authority to do so, and if the law was not complied with as to ordering, conducting, and canvassing the returns these considerations would necessarily involve inquiry into the validity of said election, and which is expressly forbidden by section 5464 of the Code of 1907.

We hold that the circuit court erred in rendering judgment against the respondents, and in not dismissing the proceedings, and the judgment is reversed, and one is here rendered denying relief and dismissing the proceedings.

Reversed and rendered.

DOWDELL, C. J., and SAYRE and SOMERVILLE, JJ., concur.

## On Rehearing.

ANDERSON, J.—While counsel make no war on the opinion, they claim that it overlooks or does not deal with the facts in the case. The facts were fully considered before and during the consideration of this case in consultation and if they were not dealt with or set out at lenth in the opinion it was because the writer thinks that legal opinions should not contain facts, except so far as it may be necessary to an understanding of the questions discussed, and that they should be set out by the reporter in the proper place. We did not overlook the fact that a previous meeting was held by the mayor and a majority of the council on September 2, when inspectors and clerks were selected, and that notice was given of said selection. The first meeting, however, did not select or name any special place for the election, and the action of the mayor in designating the council

chamber as the place in his notice was unauthorized, except for the fact that it had been the place for holding previous elections, as the law (section 1164 of the Code of 1907) authorizes the council, and not the mayor, to direct the polling place or places.

The propriety of naming the Grimes store, after the mayor had given notice that the election would be held at the council chamber, may be questioned, but this did not render the action of the council void, as they, and not the mayor, were authorized to fix the place.

Nor can it be said that the council did not have the authority to change the inspectors and clerks before the day of the election. Of course the law contemplates that they be selected 10 days in advance of the election, but doing so at a subsequent day would not render the election void. If some of them should die or leave before the election, or if the council should discover that they were unfit, they would have authority to appoint others, and this authority is not taken from them, merely because section 1164 makes provision for what shall be done if the inspectors, or any one of them, do not appear on election day. This merely provides for a contingency in the event those selected by the council do not appear, but does not mean that the council exhausted their authority in the first instance.

Moreover the law contemplates that the election should be held by qualified electors, and if so held, and fairly so, it matters but little who they were, and the fact that one person or another served as an inspector or clerk does not render the election void. Therefore the polling place was fixed at Grimes' store by those who had authority to do so, and at the council chamber by one who had no authority to do so and, whether the inspectors were or were not selected under the letter of the law, they were eligible to hold same and they held

it under the authority of those having the power to appoint, and we cannot say that the election held in Grimes' store was void, and was not such an election as could be contested.

We repeat that whether the election was regularly held or not it was held under authority of law, and was not per se void, and was such an election as could be contested, and cannot be questioned by quo warranto. Had there been no attempted election at the city hall, and the one at Grimes' store was the only one held at Samson on September 20, it would scarcely be contended that the election in question was void. Therefore simply because a minority saw fit to cast their ballots at the unauthorized place fixed by the mayor, this fact should not operate to render null and void a perhaps irregular election, but one which had been ordered by those in authority, and at which a majority of the voters who voted or attempted to vote on that day saw fit to cast their ballots, and who do not appear to have been misled or deceived by the failure to give sufficient notice that the election was going to be held at the Grimes store, instead of the place selected by the mayor, and who had no authority to make the selection, except that he perhaps felt that he could arrogate unto himself the right, because of the fact that the city hall was the place for holding previous elections.

The application for rehearing is therefore overruled.

DOWDELL, C. J., and SIMPSON, McCLELLAN, MAYFIELD, and SOMERVILLE, JJ., concur in the opinion, and in denying application for rehearing.